## CHARLESTON.

BARRETT v. COAL COMPANY.

Submitted January 21, 1902.    Decided April 5, 1902.

1.  CONTRACT—*Brick—Superintendent Inspector.*

    Where by a contract brick are to be made of certain kind and
    character "to the satisfaction of the general superintendant
    of said company or his authorized representative," the right
    of rejection by the superintendent is absolute, and his reasons
    cannot be investigated, if in good faith, that is not fraudulent.
    (pp. 417, 419).

2.  CONTRACT—*Quantum Meruit—Recovery.*

    Where there is a contract for work, and it is only partially
    executed, and so no recovery can be had on a special count
    based on the contract, yet there may be recovery for the actual
    worth to the party of the work done upon a *quantum meruit*
    under the common count, if the failure to complete the work
    is without the fault of the plaintiff.   (pp. 419, 420).

Appeal from Circuit Court, Raleigh County.

Action by Leon Barrett against the Raleigh Coal & Coke
Company.   Judgment for plaintiff, and defendant appeals.

*Reversed.*

JOSEPH M. BROUN, W. L. ASHBY, and JOHN M. BALL, for
appellant.

BROWN, JACKSON & KNIGHT, A. P. FARLEY, and JOHN
HATCHER, for appellee.

BRANNON, JUDGE:

Leon Barrett, in an action of *assumpsit* in the circuit court
of Raleigh County against The Raleigh Coal and Coke Com-
pany, recovered a verdict and judgment for four hundred dol-
lars and the company has brought the case to this Court. Bar-
rett and the company made a written contract by which Barrett
undertook to manufacture for the company five hundred thou-
sand brick in a thorough and workmanlike manner, of certain
description, ready for the builder's use "and to the satisfaction
of the general superintendent of said company or his author-
ized representative." Barrett claiming that the company had

accepted sixty thousand brick and then refused to accept any more brick or to allow him to proceed in the execution of the contract, brought the action against the company to recover damages for breach of the contract.

The first error assigned is that the court overruled a demurrer to the declaration, consisting of the common counts and a count based on the contract. It is claimed that the special count is bad because it says and counts on both an oral and written contract. If so, it does not state any difference in legal effect between the oral and the written contract. Judging from the count we would say that there was an oral contract afterwards reduced to writing. I see no substantial objection to this. Besides, duplicity is no objection nowadays.

The general superintendent stopped the work and refused to accept any more brick. Upon the trial the defendant offered and was refused a number of instructions. One of these instructions is to the effect that if the jury believed from the evidence that the brick manufactured by the plaintiff and offered for inspection under his contract were in good faith rejected by the general superintendent of the company, or his authorized representatives, as not being to his or their satisfaction, the action of said superintendent or his representatives is binding upon both parties to the contract, and the plaintiff is not entitled to any credit against the company for the brick so rejected. The defendant also asked another instruction, that under the contract the general superintendent or his authorized agents were made sole judges of the quality of the brick manufactured under the contract, and that the action of the superintendent or his representatives in accepting or rejecting said brick was conclusive and binding upon both parties, unless the superintendent or his representatives acted fraudulently. The cases of *Kidwell* v. *B. & O. R. R. Co.,* 11 Grat. 676, and *B. & O. R. R. Co.* v. *Polly Woods & Co.,* 14 Grat. 447, hold that where a contract for a construction of work provides that estimates of an engineer of the work shall be conclusive upon the parties, the contract is valid and the estimate of the engineer is conclusive in the absence of fraud or mistake. The contract in the present case does not in terms say that the action of the superintendent shall be conclusive, but the decisions just cited are upon the same line, and bear on the present case. Indeed, I do not perceive that under the law the present contract has any

less force than if it expressly provided that the action of the superintendent in rejecting the brick should be conclusive. The decisions upon just such a contract as this are very numerous. In *Osborne & Co.* v. *Francis,* 38 W. Va. 312, it is held that where a party bought a binder upon condition that if it did not work to his satisfaction, he might return it, his right to reject was absolute, and his reasons for rejection could not be investigated. In Benjamin on Sales (Bennett's Edition) 607, we find the law stated upon many authorities that "it is clear that a condition that the article to be made shall be satisfactory to the buyer, is a valid condition, and if it is not so, and the article is not accepted, the vendor has no remedy. It is immaterial whether the article does or does not conform to the order; the other is not bound to accept, or to be satisfied." Why is this the law? Because so the bond is writ. Though it takes the pound of flesh, so the bond is writ. It is the contract. The party has proposed to make his own will conclusive, and the other party has accepted that as the contract, and a court cannot set itself up, nor can a jury, as a judge to say whether the party who is given this power of action by the contract has acted reasonably or unreasonably. In *Seeley* v. *Welles,* 120 Pa. St. 69, it is held in such case that defendants "objections may have been ill founded, or unreasonable in the opinion of others, yet if they were made in good faith he had the right to reject the machine." In *Brown* v. *Foster,* 113 Mass. 136, the plaintiff agreed to make a satisfactory suit of clothes, and the defendant returned the suit as unsatisfactory. It was held that an action for the price could not be maintained. The plaintiff offered to amend the suit, but the defendant refused. The court said that if the plaintiff chose to contract that the suit should be satisfactory to the defendant, he could recover only for the contract as it was made, and even if the articles were such that the other party ought to have been satisfied with them, it was yet in the power of the other to reject them as unsatisfactory, and that it was not for any one else to decide whether a refusal to accept is or is not reasonable, when the contract permits the defendant to decide himself whether the articles furnished are to his satisfaction. Parsons on Contracts (8th Ed.), Vol. 2, p. 62, note 1 will state the same doctrine. It was plainly error to reject the defendant's instructions 1 and 2. It was not error to reject de-

fendant's instruction 5, that "vague statements of estimated profits are not entitled to weight as evidence when the witness cannot or will not give the facts and figures upon which such estimates are based." If that evidence was admitted as competent by the court, the court could not pass upon its weight as proposed by this instruction. It was error to reject instruction No. 6 that "damages must be proven and cannot be presumed."

Instruction No. 7 told the jury that the defendant was not bound by the contract to make any further advances to the plaintiff at the time the second kiln of brick·was complete and offered to the defendant. The contract provided for estimates from time to time, and payment of not over seventy per cent. of the amount due thereby, and did not provide for any advances, and the plaintiff admitted as a witness that at that time there was not anything due him unpaid. This instruction should have been given—No. 7.

No. 8 should have been given, telling the jury that if the plaintiff requested an advance of money for the payment of his employes, and that he was not, at the time of such request, entitled to such advance, and that he quit work on account of such refusal and refused to make any more brick, they must find for the defendant. If the brick already received had not been fully paid for, that instruction would have been objectionable, as the plaintiff might, under circumstances, be entitled to recover, under the common counts, as below stated, for what brick he had furnished; but he admitted that he had been fully paid. It was a question for the jury whether the plaintiff had so quit work, as supposed in the instruction. I do not think that instructions 9 and 11 were proper. They go to the effect that if the plaintiff and the superintendent jointly selected the clay for making brick, the responsibility for the choice could not be cast on the defendant alone; and that if the clay on the Hull farm was unfit for brick, the fault was with the plaintiff in using without objection the clay for the same, if he held himself out as a fair brick maker, and did not reject the clay offered by the defendant as unfit. The contract positively provides that Barrett should burn the brick at a point to be designated by the company on the Hull farm. The choice was with the company. The contract placed no duty as to that on Barrett. If the clay was bad, it was not Barrett's

fault, and he is not answerable for any damage resulting from that cause. It is said that the court erred in admitting the contract in evidence because of variance between the declaration and the contract. As the company had the power of rejection, it would be required to pay for what brick it accepted, not under the special count, but under one of the common counts; for though the work was not completed, the plaintiff could recover upon a *quantum meruit* for those brick which, the company had accepted, as otherwise he would get no pay therefor. This would be the case if he had not been paid therefor fully, or if there was not a wilful dereliction of duty by the plaintiff without the assent and against the will of the defendant, as by the abandonment of the contract because of an unwarranted demand for advance pay. Though a man contract to build a house for another for a certain price, and does part of the work, and is prevented from doing the balance by the fault of the other party, or from cause beyond his power, he may recover its worth to the party for what he has done, if it has any value, under the common counts. 2 Rob. Prac. 412; 3 Minor Inst., 330; 31 Am. R. 100; 2 Parsons on Contv. side 523. Thus the common counts would justify the admission of the contract in evidence. While speaking of this point I will say that as the case has to go back, it becomes unnecessary to speak of the alleged error, though I do not see it as such, in allowing an amendment and refusing a continuance. And as to the variance, that can be corrected. We do not think there is any error shown by bill of exceptions' No. 3 in allowing plaintiff to give evidence that a sum had been offered him to compromise his claim. Beyond question an offer of mere compromise is not admissible. But I do not think we can rank this as an offer of compromise.

We do not think that there was any error in allowing Barrett's evidence shown in bill of exceptions No. 4. He had had some experience in brick making, and that entitled him to be heard as to his estimate of the cost of making brick. Its weight was a matter for the jury.

We think the court erred in permitting the evidence shown in bill of exceptions No. 5 to go to the jury to prove the fact that the company were to put up a large number of coke ovens and that the work had been stopped. What had that to do with this case? These brick were not to be used therein. Was it to

prejudice the minds of the jury against the defendant? This is a fit occasion to apply what is said in *Sesler* v. *Coal Co.*, decided this term, as to the impropriety of admitting in a case evidence of things foreign to the case. The same remark applies as to the testimony of R. J. Frazier as to litigation between him and the company for breach of a contract between him and it. It has nothing to do with this case, so far as I can see.

I do not think the evidence of Robinson and Lemon admissible as to the quality of the clay for brick making. They did not show themselves to be experts in that art. A brick maker does not necessarily know what clay is proper for brick. He may know a good brick when made; but that does not show that he knows anything about the clay.

Judgment reversed and new trial granted.

*Reversed.*