STATE OF IOWA, Appellee, v. JACOB CROATT, Appellant.

**BASTARDS:** Evidence—Degree of Proof—Corroboration. Princi-
1 ple recognized that, in a prosecution under the Bastardy Act,
corroboration of the complainant is not absolutely necessary.

**BASTARDS:** Evidence—Sufficiency. Evidence reviewed, and held
2 sufficient to sustain a verdict of guilt in bastardy proceedings.

*Appeal from Fayette District Court.*—A. N. HOBSON, Judge.

TUESDAY, MARCH 13, 1917.

THIS is a bastardy proceeding wherein the jury found
the defendant guilty, and he appeals.—*Affirmed.*

*D. D. Murphy & Son* and *E. H. Estey,* for appellant.

*H. M. Havner,* Attorney General, *H. H. Carter,* Assist-
ant Attorney General, and *James Cooney,* County Attorney,
for appellee.

PRESTON, J.—The only error assigned is as to the suf-
ficiency of the evidence to sustain the verdict. Appellant
argues that the story told by complainant is improbable,
because there had been no courtship; and that no seductive
arts were used as in seduction cases; and that there was
no sufficient resistance, and no outcry or complaint after-
wards, and no bruises or torn clothing, so as to constitute
rape. All these were matters to be taken into consideration
by the jury in weighing the testimony. The intercourse
could have taken place as she says.

1. BASTARDS: evi-          Appellant calls the transaction a rape;
dence: degree   but in this kind of a case, sexual inter-
of proof: cor-
roboration.     course and the birth of a child as a result
thereof are sufficient, if the jury is satisfied by a preponder-
ance of the evidence that the intercourse took place, and
that the birth of the child was the result thereof. No cor-
roboration is required, as in either rape or seduction.

The complainant is corroborated in

2. BASTARDS: evidence: sufficiency.

some particulars. A number of witnesses testify to seeing her and the defendant leave the place together; others passed them on the road; and the defendant himself, as a witness, admits that he was with her at the time of the alleged transaction, but denies the intercourse and denies that there had been at any other time any familiarities, as claimed by prosecutrix. There is testimony as to a statement alleged to have been made by defendant, after the transaction, to a brother of prosecutrix, when he bought some cattle. This witness testifies when he asked defendant: "Why he don't get married, he said he didn't have to, he could get it from every girl he went with. I said, 'I don't believe it.' Then he said 'Even Mary Franzen;'" who is the complainant or prosecuting witness. Appellant cites and relies upon the cases of *State v. McCulloch,* (Minn.) 113 N. W. 1059; *State v. Tomlinson,* 11 Iowa 401, 405; *State v. Cassidy,* 85 Iowa 145.

The facts in the Minnesota case are not at all parallel. In that case, the court said: "A very careful study of the record convinces us that the verdict is manifestly and palpably contrary to the great weight of the evidence." In that case, the defendant was 50 years of age, the father of 8 children, and, at the time alleged, was living in friendly relations with his wife and family. He had for three years been rector of the Episcopalian church, had been a minister for 23 years, and was a man of good character and standing. The complaining witness was a servant in defendant's family. The complaining witness testified that the intercourse took place on March 4th, about midnight in her bedroom upstairs. Both the defendant and his wife testified that, on that night, they were in defendant's bedroom downstairs, with a sick child, until three o'clock in the morning. It also appeared that, during the time referred to, and for several months imme-

diately preceding, complaining witness was engaged to a young man named Prail, who visited her frequently and in her bedroom until a late hour at night. Both she and Prail admitted that they spent the time each night lying upon the bed, under conditions suggesting improper rela-' tions. Another witness testified that he came home one night about two o'clock in the morning, and found prose-cutrix and Prail lying upon the bed with covering over them, sound asleep. The court said in that case, that, considering the character of the defendant, his family relations, the presence of the family in the house, the relations between the girl and Prail, the circumstances under which the intercourse is alleged to have taken place, and the time when the child was born, a case had not been shown by the weight of the testimony.

It should be said that in this case the testimony shows that the complaining witness had not been keeping company with anyone, except that she was with the defendant three times. The birth of the child was conceded, and that it was within the proper time after the date of the intercourse, as testified to by complaining witness. Someone was, of course, the father of her child. There is not a suggestion in the record nor in argument that any other person than the defendant is the father of the child.

In the *Tomlinson* case, supra, a criminal case, wherein defendant was charged with rape, the evidence was not reviewed; but the court said that it was unable to find from her statement that there was any such objection interposed or such force used as to satisfy it that the coition was against her will.

And in the *Cassidy* case, which was also a criminal case, wherein the charge was rape, the rule was referred to, as being established in this state, that, in a prosecution for a rape, the fact that a rape was committed may be established by the testimony of the injured party alone; and

that corroboration in such a case is required only as to the
connection of the accused with the offense, as provided by
the statute.   The holding in that case was, substantially,
that the evidence was insufficient to show that it was
against her will, and that it was a mere act of sexual inter-
course, with the consent of the complaining witness.   As
said, this would be sufficient in a bastardy proceeding.

We shall not take the time or space to go into the
evidence in detail.   It appears that complainant was 20
years old, and defendant 24; she was the daughter of a far-
mer, and lived with her parents on a farm; she quit go-
ing to school before she was 13 years old; she had never
been out of the county but once, and then with her father;
she was not in the habit of going to dances, and had been
to but two parties in five years; she had never kept com-
pany with a young man, nor had she ever had a young
man come to see her at her home; she had known appellant
for some time, having gone to the same school, and they
were members of the same church.   The sexual intercourse
is claimed to have taken place October 13, 1914.   A child
was born July 15, 1915.  She testifies that she was out
alone with defendant the first time in September, 1914;
went with him to a party, with defendant and two cousins
in an automobile, and came home alone with him.   She says:

"Nothing out of the ordinary happened on the road
home, but he tried.  He held me, and I jumped out of the
car and said he should leave me go.   I was in the home
yard.   It was night, about two o'clock.   He said he was
going to find out what kind of a girl I was, put his hands
on me, had his arms around me.   When he put his hands
on me, I went in the house.   About two or three weeks
after that, in September, I saw him at a dance.   I did
not go with him, but with his brother and my cousin.   I
came home with him alone at that time, a little after mid-
night, in an auto car.   Nothing happened at that time.

No one was with me, and nothing out of the ordinary was said. The next time I saw him was at a wedding, October 13th. I was in defendant's company at that time, going home. We started home a little after twelve, between twelve and one; he and I were alone; we went with Croatt's horse and buggy. When we started home, several others and my brother were present. After we started, we talked about the wedding. He said his brother was married now, and maybe I should be his girl; I told him no; then he sat for a while, and then he says he was going to see if someone was coming; then he had intercourse with me. I was sitting in the buggy; he was in the buggy; he put his arm around me then and held me down; he put his hands on my person and had intercourse with me there; he hurt me. I begged him not to do it, but he wouldn't pay any attention to it. A team was coming, and I knew it was my brother; that no other team was coming that way, and I hollered at my brother to stop, and he stopped and I got off the buggy and rode with my brother. Jacob Croatt is the father of the child."

As before stated, it is not claimed that she made any outcry or complaints, or that her clothing was torn, or any circumstances of that kind. A doctor testifies as to the period of gestation. Plaintiff's mother testifies that she never knew of her daughter's being in company with any man except defendant; that she saw her daughter start with defendant to go to the first party before mentioned. Plaintiff's brother testifies to passing defendant and his sister on the road, and about her getting into the buggy with him. Her father testifies as to some of the matters before referred to.

As said, defendant denies all statements as to familiarities, and denies the intercourse. Several witnesses testify for defendant, as to seeing the parties at the different parties before referred to, and about their

leaving the parties, and some of the other transactions, and the distances to the homes, and the distance from the place where the wedding was held on the last night to the point where complainant's brother passed them, and the general situation.

Without going into the testimony further, it is enough to say that, after a careful examination of the record, we are satisfied that the trial court properly submitted the case to the jury, and that the verdict is sustained by the testimony. This being so, the judgment is—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.