## SCOTT v CRAWFORD

Ohio Appeals, 5th Dist, Licking Co·
No 1755. Decided Sept., 1930

KUNKLE, J, (2nd Dist) sitting in place of HOUCK, J.

LEMERT, PJ.

Under this contract the Andrews Asphalt Paving Company agreed to furnish and was obligated to furnish Warrenite-Bitulithic Pavement mixtures manufactured by Warren Brothers Company and to furnish to the County of Licking, in connection with the laying of said mixtures, the expert advice, inspection and laboratory supervision of Warren Brothers Company.

The County Commissioners of Licking County, the City of Newark, who were paying one-third of the costs of this improvement, and the property owners, who were to be assessed for one-third of the costs of the improvement, all had a right to expect that they were to receive the genuine Warrenite-Bitulithic mixtures and pavement, safeguarded by the exeperience and technical ability of the Warren Brothers Company and its engineers. That is what the contract plainly and distinctly calls for.

The uncontradicted testimony in the record shows that Warrenite-Bitulithic Pavement is covered by the trade-mark and patents owned by Warren Brothers Company and that Warrenite-Bitulithic Pavement must necessarily be manufactured under the trademark and patents of Warren Brothers Company and by Warren Brothers Company or under its direction, inspection and laboratory supervision.

The record discloses, and in fact the defendant admits that it did not procure the genuine Warrenite-Bitulithic Paving mixtures from Warren Brothers Company and that it did not furnish the direction, inspection and laboratory supervision of Warren Brothers Company in connection with the construction of this work.

In other words, the contention of the defendant the Andrews Asphalt Paving Company is that it furnished a pavement which complied with that part of the specification which determines the proportions of all materials to be used and the quality of materials and that it laid the material on the street in accordance with the provision of the specifications setting forth the method of laying—that is, the defendant claims that it furnished something just as good as Warrenite-Bitulithic, but it does not claim that it furnished the genuine article which its contract with the County Commissioners of Licking County called for.

So the question presents itself, did such failure in this respect constitute a material breach of the contract with the Board of County Commissioners of Licking County?

An examination of the records disclosed that the defendant company, to-wit, the Andrews Asphalt Paving Company, did not furnish the engineering supervision, inspection and laboratory service of Warren Brothers Company nor any other engineering inspection or laboratory service.

The County Commissioners of Licking County, the City of Newark and the propetry owners, were entitled under the terms of the contract to the engineering inspection and laboratory service of Warren Brothers Company, an no other. The Andrews Asphalt Paving Company had no right to take upon itself the right to waive a requirement of its contract with Licking County calling for the engineering experience and ability of Warren Brothers Company, the originators and inventors of the pavement called for by the contract and deprive the County, City and property owners, of this protection.

Such failure of Andrews Asphalt Paving Company to furnish the engineering supervision, inspection and laboratory service, in our opinion constitutes a material breach of its contract with the Board of Commissioners of Licking County, or, in other words, the paving mixtures which Andrews Asphalt Paving Company furnished as a pretended compliance with its contract did not, as a matter of fact, comply with the contract or specifications.

It is admitted by the defendant company, to-wit, the Andrews Asphalt Paving Company that they did not furnish the engineering direction, laboratory supervision and inspection of Warren Brothers Company, which it plainly agreed to furnish in its contract with the County Commissioners of Licking County. The Andrews Asphalt Paving Company, however, seeks to excuse itself in this failure by saying that the work was inspected by the Columbus Testing Laboratory, which inspection took the place of the Technical inspection of the Warren Brothers Company, which it agreed to furnish.

The contract before us plainly provides that the engineering direction, laboratory supervision and inspection of Warren Brothers, and no other, shall be furnished, and the failure of Andrews Asphalt Paving Company to furnish this direction, Laboratory supervision and inspection, consti-

tutes a material breach of its contract with the Board of Commissioners of Licking County.

The Board of County Commisisoners did not, neither had they the right, to waive the requirements of the contract that the Andrews Asphalt Paving Company procure the Warren Brothers Company, and that the Warren Brothers Company supervise the construction.

A further examination of the record before us discloses the fact that the breach of contract on the part of Andrews Asphalt Paving Company was intentional, wilful and premeditated and precludes them from recovery on the theory of substantial performance, even if substantial performance was established.

Williston on Contract, Vol. 2, paragraph 842, page 1613.

We believe it to be the law that substantial performance, as has been well defined by various cases, permits only such omissions or deviations from the contract as are inadvertent or unintentional, not due to bad faith, which do not impair the structure as a whole and which are remedial without doing material damage to others parts of the improvement in tearing up and reconstructing, and which may without injustice be compensated by deductions from the contract price.

"In order that an exception to the general rule requiring strict performance may be recognized in any event, there must have been an attempt in good faith to perform; there must be no wilful or intentional departure, and the defects must not prevade the whole or be so material that the object which the parties intended to accomplish, to have a specified amount of work performed in a particular manner, is not accomplished, and the material or services must have been accepted or retained. The non-performance of a material part of the contract will prevent the performance from amounting to a substantial performance."
13 Corpus Juris, 692.
"Where a contractor commits wilful default and yet claims the contract price, he in effect claims that he has a right to break his contract, but he has no such right. If the failure to perform the express contract be intentional, it is such bad faith he can recover nothing."
190 Mass., 43; 29 Minn., 146.

134 N. Y., 45;   81 N. Y. 211;
42 Minn., 414;   80 Texas, 23.

It has even been held in different jurisdictions and in our own state that one can not recover on a contract if he intentionally has failed to perform a part of it, although the part which he has failed to perform may not be of the essence of the contract.

39 Oh St, 1; 190 Mass., 43;
88 Me., 237; 146 Penn St., 492;
51 W. Va., 416.

Again, it is the law that this being a contract in which the County Commissioners and the City of Newark are interested, the same being a county or a municipal contract, the rule requiring strict performance should be applied more rigidly to a county and municipal contract than to contracts of any other class.

In the 179 Iowa, 659, the Court says:

"Street paving contract ought to be strictly complied with perhaps more so than under the rules heretofore announced by this Court. It is well known that in many instances improvements of this character are not well performed and the contracts and specifications are substantially ignored at least in many particulars and then the doctrine that there has been substantial compliance is invoked. To use an inelegant expression, but one in more or less common use at this time, the contractor simply does enough work to try to "get by" under the rule of substantial performance. As a matter of common honesty, such contracts ought to be strictly complied with and performed and the city authorities should see to it that it is so."

"Unless there is substantial performance of a municipal contract, coupled with an honest endeavor on the part of the contractor, to strictly perform, neither the Municipality nor the property owners can be forced to pay for the work."

In the 194 Massachusetts, 268, it was held:

"A Municipal contractor who voluntarily fails to complete work on a building which he has contracted to perform, can recover a reasonable value of the part performed only when he has substantially performed the contract and has intended in good faith to perform the whole."

However, in the case at bar, we do not believe from the record that there was an honest effort on the part of Andrews Asphalt Paving Company, to strictly perform its contract, but the record, on the other hand, discloses that there was an intentional and wilful departure from the terms of the contract, directly in the face of official rulings of the engineer in charge of the work that its operations did not comply with the contract and an express order of the engineer in charge to immediately cease work, remove the offending materials and not to continue operations on the contract until after it had done so. The record discloses that the Andrews Asphalt Paving Company was put strictly on notice that it was committing a breach of contract and its election to continue this breach constitutes an intentional and wilful violation of the contract; which action, in our opinion, on its part places it beyond the pale and precludes it from recovery under the rules as laid down uniformly by the courts.

It should be borne in mind in this case that this suit was not brought after the pavement had been laid and completed, but it was brought at the very inception of the laying of the pavement, immediately when it became apparent that the Andrews Asphalt Paving Company did not intend to procure their pavement mixtures from Warren Brothers, although they had been instructed to do so by the City Engineer. There was and is no element of surprise, concealment or unfair dealing in this case on the part of the authorities of the City of Newark. The record discloses that long before the laying of the pavement was commenced by the Andrews Asphalt Paving Company they had full warning of the attitude of the public authorities of the city. As soon as the laying of the pavement was commenced this suit was brought.

The record is plain and clear that the Andrews Asphalt Paving Company deliberately chose to do what the City Officials regarded as a violation of their contract. If the Andrews Asphalt Paving Company have invested their money in a pavement, they should remember that they are now in a Court of Equity.

It is plain from the record that as to the Andrews Asphalt Paving Company, the warning was sounded, the danger signals were up, they drove by, and they had full notice that the City of Newark proposed to take whatever means it had to enforce its rights and to prevent a violation of the contract.

Therefore, if it is true that the Andrews

Asphalt Paving Company has neither strictly performed or substantially performed within the meaning of the law, and that it has intentionally and wilfully violated its contract with the Board of County Commissioners of Licking County, Ohio, and Warren Brothers Company, and if it has infringed the trademarks and patents of Warren Brothers Company, it has also laid the Board of County Commissioners of Licking County open to a suit for infringement in charge, and we think the record clearly discloses that the Andrews Asphalt Paving Company has forced upon the City of Newark, Ohio, and the property owners, a pavement which in no way conforms with its contract.

We therefore find and hold that the Andrews Asphalt Paving Company has breached its contract with the Board of County Commissioners of Licking County, Ohio, in material respects and that said Company has not substantially performed its contract, and that the breaches of contract by Andrews Asphalt Paving Company were intentional and wilful, and we therefore find and hold, in equity and in good conscience, that a permanent injunction should be and the same is hereby granted.

Exceptions may be noted.

Sherick, J, and Kunkle, J, concur.