**NUCLEOPATH, INC., and Medical Diagnostics, P.C., Appellants–Petitioners,**

v.

**INDIANA STATE DEPARTMENT OF PUBLIC WELFARE and the State Board of Public Welfare, Appellees–Respondents.**

No. 49A02–9312–CV–665.[1]

Court of Appeals of Indiana, First District.

Aug. 25, 1994.

Transfer Denied Dec. 16, 1994.

---

1. This case was diverted to this office on May 24, 1994, by direction of the Chief Judge.

Gerald G. Goldberg, Joseph P. O'Halloran, Robert A. Bauerschmidt, Widman, Goldberg & Zulkie, Chicago, Brent D. Taylor, Scott M. Kosnoff, Baker & Daniels, Indianapolis, for appellants.

Pamela Carter, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellees.

BAKER, Judge.

We decide today whether the appellee-respondent Indiana State Department of Public Welfare (Department) wrongfully denied Medicaid reimbursement for clinical laboratory services by appellant-petitioners Nucleopath, Inc. and Medical Diagnostics, P.C. (collectively Laboratories). The Laboratories attack the trial court's decision affirming the interpretation of the appellee-respondent State Board of Public Welfare [2] (Board) of the federal and state Medicaid reimbursement laws and regulations.

### FACTS

Nucleopath and its successor, Medical Diagnostics, are Indiana professional medical corporations. The Laboratories have contracts with St. Mary's Medical Center in Lake County to operate laboratories in two hospitals. The Laboratories agreed not to be compensated by St. Mary's for the Medicaid services the Laboratories performed at St. Mary's hospitals. Instead, the Laboratories have "provider agreements" with the Department, the state agency that administers Indiana's Medicaid Program, to be compensated for their services rendered to Medicaid recipients at the hospital-based laboratories. Medicaid reimbursements are governed by federal and state statutes and regulations.

The Laboratories submitted claims to the Department for reimbursement, which claims included bills for general administration,

---

**2.** The previous authority of the State Board of Public Welfare has been transferred to the Office of Medicaid Policy and Planning, *see* IND. CODE § 12-15-1-1.

quality control of the laboratories, teaching, and establishing lab methodologies for the technicians. Dr. Earl Mason, President of the Laboratories, identified these claims as part of the "professional component" of the clinical laboratory procedures.

On June 1, 1986, the Department began denying Medicaid reimbursement on the Laboratories' claims for the professional component services because they did not require the direct involvement of a physician. The Department maintained that professional component services not requiring a physician's services in hospital-based laboratories are reimbursed only to the hospital under Medicaid law. The Laboratories sought a hearing before an administrative law judge (ALJ) challenging the Department's denials. The stipulated value of the claims rejected from June 1986 through March 1991 was $774,755.30. The ALJ found in favor of the Laboratories; however, the Board did not accept the ALJ's findings but rather upheld the Department's denials of payment on May 28, 1991. The Board declared that the Department does not pay hospital-based laboratories for such professional component services. The Board issued an amended decision on July 2, 1991, adopting the Department's proposed findings of fact and conclusions of law.

The Laboratories filed for judicial review. On March 25, 1993, the trial court entered numerous findings of fact and conclusions of law, affirming the Board's decision.[3]

## DISCUSSION AND DECISION

■ Judicial review of an administrative decision is limited to whether the agency possessed jurisdiction over the subject matter, whether its decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory, or legal principle. *Indiana Dep't of Natural Resources v. United Refuse Co.* (1993), Ind., 615 N.E.2d 100, 103. The Laboratories do not dispute the findings of fact, rather their arguments attack the Board's interpretation of the Medicaid laws.[4]

Medicare, created under Title XVIII of the Social Security Act, is funded and administered by the federal government. Medicare provides health insurance to the aged and disabled. On the other hand, Medicaid was established under Title XIX of the Social Security Act and is regulated by the states, although funded jointly by the states and the federal government. Medicaid is intended to provide medical assistance to those who cannot afford it. A state must present a state Medicaid plan for the Department of Health and Human Services' (DHHS) approval in order to obtain federal funding. *See Indiana State Dep't of Pub. Welfare v. Lifelines of Indianapolis Ltd. Partnership*, (1994), Ind. App., 637 N.E.2d 1349 (discussion on Medicaid Act).

■ The Department rejected the Laboratories' claims by applying Medicare standards in reimbursing hospital-based laboratories for Medicaid services. The Laboratories deny that the Department has any power to apply Medicare standards to Medicaid reimbursements. To the contrary, the Department asserts that its authority to do so arises from 42 C.F.R. § 447.252 and Attachment 4.19–A of Indiana's Medicaid State Plan.

Indiana law mandates that Medicaid payments be made in compliance with any reimbursement criteria specified under federal law or regulations. IND. CODE § 12–15–13–2(b) (1992) (formerly IND. CODE § 12–1–7–17.6). Located in the federal Medicaid

---

3. This is the second time that these parties have been before this court. In 1989, we resolved their dispute over the sufficiency of documentation of services for which Nucleopath sought Medicaid reimbursement. *Indiana State Dep't of Pub. Welfare v. Nucleopath, Inc.* (1989), Ind.App., 536 N.E.2d 1045, *trans. denied.*

4. The Laboratories rant that the trial court and the Board ignored the ALJ's decision. We remind the Laboratories that the ALJ made a rec-

ommendation to the Board but that the ultimate power was vested in the Board. *See* 470 I.A.C. 1–4–6 (1992). The Laboratories also complain that the Board adopted the Department's proposed findings and conclusions. Such procedure is not inappropriate, but rather, is encouraged. *See* Ind. Trial Rule 52(C). The origin of the findings and conclusions do not weaken them. *Indiana Tri–City Plaza Bowl, Inc. v. Estate of Glueck* (1981), Ind.App., 422 N.E.2d 670, 674.

regulatory section, 42 C.F.R. § 447.252(c) provides: "If the agency chooses to apply the cost limits established under Medicare (see § 413.30 of this chapter)[5] on an individual provider basis, the plan must specify this requirement." Following 42 C.F.R. § 447.-252(c) and I.C. § 12–15–13–2(b), the Department enacted Attachment 4.19–A in its Medicaid State Plan, which has been approved by the Health Care Financing Administration (HCFA) of the DHHS. Attachment 4.19–A directs the Indiana Medicaid Program to reimburse hospitals for costs of services in accordance with Title XVIII [Medicare] reimbursement provisions. Attachment 4.19–A further adopts the upper limits of Medicaid reimbursements as determined under Medicare costs principles. The particular federal Medicare regulations applicable to hospital-based laboratories are set forth in 42 C.F.R. §§ 405.550[6] and 405.556,[7] and allow Medicaid reimbursement for laboratory services that require a physician's performance.

The Laboratories contend that the federal Medicaid regulations provide authority for the states to apply only the Medicare cost limits set forth in 42 C.F.R. § 413.30, not the Medicare reimbursement provisions in 42 C.F.R. §§ 405.550 and 405.556. Although 42 C.F.R. § 447.252(c) requires a state Medicaid plan to expressly adopt the Medicare cost limits if the state's agency intends to apply those cost limits, it does not prohibit a state Medicaid plan from adopting other portions of the Medicare provisions. Indiana specifically adopted in Attachment 4.19–A the Medicare cost limits and its reimbursement provisions. The Laboratories fail to present any authority that precludes a state from applying the Medicare reimbursement provisions to its Medicaid plan. Thus, the Laboratories have failed to carry their burden of showing the Board's decision violated any statutory or legal principle.

■ The Laboratories next argue that Attachment 4.19–A applies to hospitals, not hospital-based laboratories, and therefore, is not applicable to their Medicaid claims. Although Attachment 4.19–A generally refers to hospitals, it also provides the rules for hospital-based laboratories that are not independent laboratories. *See College of American Pathologists v. Heckler*, 734 F.2d 859 (D.C.Cir.1984) (operating costs of hospital-

---

**5.** 42 C.F.R. § 413.30(a) provides the general rules under which the HCFA may establish limits on reasonable provider costs and reasonable operating costs of inpatient hospital services in determining Medicare program payments.

**6.** 42 C.F.R. § 450.550 reads:

(b) Conditions for payment of services of physicians to provider patients. The carrier pays for services of physicians to patients of providers on a reasonable charge basis ... only if the following requirements are met:
(1) The services are personally furnished for an individual patient by a physician;
(2) The services contribute directly to the diagnosis or treatment of an individual patient;
(3) The services ordinarily require performance by a physician; and
(4) In the case of ... laboratory services, the additional requirements in ... § 405.556 must be met.

. . . . .

(e) Effect of Physician's assumption of operating costs. If a physician or other entity enters into an agreement (such as a lease or concession) with a provider, under which the physician (or entity) assumes some or all of the operating costs of the provider department in which the physician furnishes physician services in the provider, the following rules apply:

(1) The carrier makes payment under a radiology fee schedule or on a reasonable charge basis only for a physician's services to an individual patient.
(2) To the extent the provider incurs a cost reimbursable on a reasonable cost basis under Subpart D of this part, the intermediary will pay the provider on a reasonable cost basis for the costs associated with producing these services, including overhead, supply, and equipment costs, and services furnished by nonphysician personnel.
(3) The physician (or other entity) will be treated as related to the provider within the meaning of § 405.427 of this chapter.

**7.** 42 C.F.R. § 405.556 states:

(a) Physician laboratory services. The carrier will reimburse laboratory services furnished by a physician to an individual patient on a reasonable charge basis only if the services meet the conditions for reasonable charge payment in § 405.550(b) and are—
(1) Anatomical pathology services;
(2) Consultative pathology services that meet the requirements in paragraph (b) of this section; or
(3) Services performed by a physician in personal administration of test devices, isotopes, or other materials to an individual patient.

based laboratories deemed as part of the hospital's expense in providing inpatient care). This is evident from 42 C.F.R. §§ 405.550 and 405.556, which are regulations particularly governing hospital-based laboratories that Attachment 4.19–A incorporated. The Laboratories again fail to prove that the Board wrongfully implemented the Medicaid laws and regulations.

■ The Laboratories contend that if the Department incorporated the Medicare reimbursement provisions for Medicaid claims through Attachment 4.19–A and I.C. § 12–15–3–2(b), the incorporation is invalid under IND. CODE § 4–22–2–21 because it does not fully and exactly describe the matter incorporated by reference. I.C. § 4–22–2–21 allows an agency to refer to a matter that is directly or indirectly referred to in a primary matter by fully and exactly describing the primary matter. I.C. § 12–15–3–2(b) and Attachment 4.19–A sufficiently satisfy this requirement by Attachment 4.19–A's reference to Title XVIII costs and reimbursement provisions and I.C. § 12–15–3–2(b)'s mandate regarding reimbursement criteria.

■ Finally, the Laboratories attack the trial court's conclusion that their claims were prohibited by 405 I.A.C. 1–7–25 (formerly 470 I.A.C. 5–9–26), because they are noninterpretive services that do not fall within one of the exceptions. The Department reimburses most clinical diagnostic services of hospital-based laboratories. *See* 405 I.A.C. 1–7–25. A laboratory performing clinical diagnostic analysis must bill Medicaid directly. 405 I.A.C. 1–7–25(b)(2)(B). However, for non-anatomical laboratory procedures, such as the Laboratories' claims here, Indiana's Medicaid program reimburses only when they require a physician's services. *See* 405 I.A.C. 1–7–25(f).

The trial court found that the Laboratories are seeking reimbursement for clinical laboratory services that Dr. Mason called the "professional component." The trial court held, however, that the claims did not meet the legal definition of professional component services in 42 C.F.R. §§ 405.550(b) and 405.-556. The Laboratories do not challenge the court's finding that their claims are for non-anatomical laboratory procedures. Rather, they assert that because the professional component is inherently present in every laboratory test, as stated in our prior decision, their claims must be reimbursed. *See Nucleopath*, 536 N.E.2d at 1049. The Laboratories misinterpret our prior decision as finding their claims are reimbursable. In Judge Shields' concurring opinion, she expressed that whether the professional component is compensable was not in issue. *Id.* at 1051. Reviewing the Department's application of the definitions of 42 C.F.R. §§ 405.550(b) and 405.556, we find no error.

Although the result may seem harsh, the purpose of the reimbursement regulations is to avoid double billing by allowing only the hospital provider to be reimbursed for hospital-based laboratory services that do not require a physician's services. Even though no double billing seems to have occurred here, the Department has not recognized an exception to the Medicaid laws in such instances. We cannot override the Board's decision where no legal principle has been violated. Had St. Mary's made these claims, they would have been paid and the Laboratories could have sought reimbursement for its services at St. Mary's if they had not entered a contract otherwise.

Judgment affirmed.

NAJAM and GARRARD, JJ., concur.