INDIANA TRI–CITY PLAZA BOWL,
INC., Appellant
(Plaintiff/Cross-Defendant),
v.
The ESTATE OF Charles H. GLUECK
and Rebecca A. Glueck, Appellees
(Defendants/Cross-Complainants).

No. 3–180A17.

Court of Appeals of Indiana,
Third District.

June 29, 1981.

Rehearing Denied August 14, 1981.

Palmer C. Singleton, Jr., Gregory R. Lyman, Singleton, Levy & Crist, Highland, for appellant.

Lowell E. Enslen, McHie, Enslen & Myers, Hammond, John W. Barce, Barce, Vann & Ryan, Kentland, for appellees.

STATON, Judge.

Indiana Tri-City Plaza Bowl, Inc. (Bowl) appeals the trial court's entry of judgment for Rebecca A. Glueck, individually and as widow of and on behalf of Charles H. Glueck, deceased (Glueck) on Glueck's counterclaim for damages. From the bench trial and the specific findings of fact and conclusions of law, Bowl raises the following issues for review:

(1) Did the trial court err in denying Bowl's motion for a continuance?

(2) Did the trial court fail to exercise its independent judgment when it adopted verbatim Glueck's proposed findings of fact and conclusions of law?

(3) Did the trial court err in making the following findings of fact:

(a) Bowl breached the Settlement Agreement by unreasonably withholding approval or disapproval of the proposed parking lot plans;

(b) Bowl forwarded an uncertified accounting to Glueck.

(4) Did the trial court err in admitting certain evidence over Bowl's hearsay objection?

(5) Did the trial court err in assessing damages?

We reverse as to Issue 5 and affirm all other issues.

In 1959, Bowl and Glueck signed a lease agreement which required Glueck to provide Bowl with adequate paved parking and a building for Bowl's bowling alley. From 1959 to 1970, Bowl used the parking facilities of the adjacent shopping center owned by Glueck. In 1970 the shopping center went into receivership. The trustee erected a fence to prevent Bowl's customers from parking at the shopping center. Bowl decreased the amount of rent it was paying. Bowl filed a claim for damages and specific performance of the lease. Glueck counterclaimed (misnamed a cross-complaint, Ind. Rules of Procedure, Trial Rule 13) for damages and an accounting. The parties voluntarily attempted to resolve their disputes by executing a settlement agreement, denominated as the Memorandum of Understanding. Three months after the settlement agreement was executed, Glueck amended her counterclaim to allege breach of the settlement agreement. Before the bench trial, the parties stipulated (1) all issues of law and fact were merged into the settlement agreement; (2) the complaint, answer and counterclaim were dismissed; (3) the amended counterclaim would survive.

I.

Continuance

Bowl contends the trial court erred in denying its motion for a continuance. Bowl's motion stated its president, Louis Gelfand, would be unable to attend the trial due to illness. An affidavit from his physician stated Gelfand was suffering from transient paralysis or brain spasm, hypertension, and a cardiac problem. The physician had prescribed that Gelfand go to a warmer climate to recover. Bowl contends that these facts establish good cause within the meaning of TR. 53.4.

Bowl failed to establish good cause within the meaning of TR. 53.4. TR. 53.4 requires Bowl to include in its affidavit "what facts [it] believes to be true, and that [it] is unable to prove such facts by any other witness whose testimony can be readily procured." Even if Bowl had complied with TR. 53.4, the trial court is not required to grant a motion for a continuance. *City of Indianapolis v. Ervin* (1980), Ind.App., 405 N.E.2d 55. The trial court has the discretion necessary for granting continuances. We will reverse only for a clear and blatant abuse of that discretion. *Id.* Bowl must show the harm resulting from the denial of its motion in order to demonstrate an abuse of discretion by the trial court. *Id.*

■ The trial court did not abuse its discretion. Bowl has not demonstrated the harm it suffered from the denial of its motion. Bowl makes the bald assertion that it was unable to present relevant testimony from Gelfand, but never hints what this testimony would have been.

Bowl also contends Gelfand should be viewed in the same light as a party to the action when the motion for continuance is considered. Bowl argues a corporation can only act through its officers and Gelfand, as president, was intricately involved in all facts relevant to the action.

Bowl's argument does not preclude the possibility of other officers of the corporation being able to fulfill the role at trial Bowl wishes to assign only to Gelfand. Present at trial was Erwin Korzen, who was responsible for the management and day to day operation of Bowl. He was also an operating partner, secretary of the corporation, and Gelfand's son-in-law. He had attended the meeting in which the settlement agreement had been negotiated. He had contacted the accountants for the information the settlement agreement required Bowl to give to Glueck and he had received Glueck's plans and specifications for the parking lot. Bowl has not demonstrated how it was harmed by Gelfand's absence. The trial court did not err in denying Bowl's motion for a continuance.

## II.

### Verbatim Adoption

■ Bowl contends the trial court erred by failing to exercise its independent judgment when it adopted verbatim Glueck's proposed findings of fact and conclusions of law. At the conclusion of the bench trial, the trial court requested the parties to submit proposed findings of fact and conclusions of law pursuant to TR. 52(C). Bowl invites us to scrutinize the findings of fact and conclusions of law and to give them less weight. We decline its invitation.

■ When the trial judge signs the findings of fact and conclusions of law, they become the court's findings of fact and conclusions of law. *Wyoming Farm Bureau Mutual Insurance Co. v. May* (1967), Wyo., 434 P.2d 507, 515; *Kamuchey v. Trzesniewski* (1959), 8 Wis.2d 94, 98 N.W.2d 403, 407. The court is responsible for their correctness. *Id.* These findings of fact and conclusions of law are not weakened because they were adopted verbatim. *Saco-Lowell Shops v. Reynolds*, 141 F.2d 587 (4th Cir. 1944). If the proposed findings of fact and conclusions of law did not state the facts as the trial court found them to be, it would not have adopted them as its own. TR. 52(C) encourages the trial court to request the parties to submit proposed findings of fact and conclusions of law. These findings will not be set aside unless clearly erroneous. TR. 52(A), AP. 15(N).

## III.

### Findings of Fact

Bowl contends there was insufficient evidence for the trial court to make the following findings of fact: (1) Bowl breached the settlement agreement by unreasonably withholding approval or disapproval of the proposed parking lot plans; (2) Bowl forwarded an uncertified lineage accounting to Glueck.

■ When we review the findings of fact of the trial court, we neither weigh the evidence nor determine the credibility of the witnesses. *B & T Distributors, Inc. v. Riehle* (1977), 266 Ind. 646, 366 N.E.2d 178, 180. The considerations of the weight of the evidence and the credibility of the witnesses are left exclusively to the trier of facts. The findings of fact will be disturbed only if the record discloses there were neither facts nor inferences upon which to base the findings. *Id.*

The settlement agreement required Glueck to submit to Bowl the proposed plans and specifications for the parking lot. Bowl had the right to approve the plans, but its approval could not be unreasonably withheld.

Glueck hired a registered architect[1] to prepare plans and specifications in accordance with the specifications in the Gary City Code, Brunswick Corporation standards, and the other requirements of the settlement agreement. After Glueck delivered the plans to Bowl for approval, Bowl failed to respond for four months; however, Bowl did send Glueck what it denominated "specifications."[2] During the trial, Bowl's witness testified the "specifications" were not for the proposed parking lot. Rather, a contractor had merely guessed what might be needed for a parking lot. Bowl's response contained neither approval nor disapproval of the parking lot plans. This evidence was sufficient for the trial court to find that Bowl failed to approve or disapprove the parking lot plans.

Bowl contends Glueck had to establish that Bowl acted in bad faith in failing to approve the plans for the parking lot because the plans had to conform to the personal satisfaction of Bowl. Although Indiana has not previously discussed the situation of a party to a contract having his duty of performance conditioned upon his own satisfaction, other jurisdictions have. A minority of jurisdictions use one standard which gives the party to be satisfied an unqualified right of rejection in all circumstances unless he acts fraudulently.[3] The majority of jurisdictions use two standards, reasonable person and good faith, to determine if a party has been satisfied.[4]

When the standard of the reasonable person is used in determining whether satisfaction has been received, dissatisfaction can not be claimed arbitrarily, capriciously or unreasonably. Satisfaction is said to have been received if a reasonable person in exactly the same circumstances would be satisfied. The reasonable person standard is employed when the contract involves commercial quality, operative fitness, or mechanical utility which other knowledgeable persons can judge. *Weisz Trucking Co., Inc. v. Wohl Construction* (1970), 13 Cal. App.3d 256, 91 Cal.Rptr. 489; *see Collins v. Vickter Manor* (1957), 47 Cal.2d 875, 306 P.2d 783 (soil compaction report and maps); *see Bowie v. Bankers Life Co.* (10th Cir. 1939), 105 F.2d 806 (evidence of insurability); *Kadner v. Shields* (1971), 20 Cal.App.3d 251, 97 Cal.Rptr. 742 (first encumbrance on luxury home); *Radlo of Georgia, Ind. v. Little* (1973), 129 Ga.App. 530, 199 S.E.2d 835 (caring and feeding of pigs); *Black Lake Pipe Line Co. v. Union Construction Co., Inc.* (1976), Tex., 538 S.W.2d 80 (inspection of construction work).

When the standard of good faith is used, the recipient of the work performed must be genuinely satisfied; which includes a subjective satisfaction. However, the mere statement by the recipient that he is dissatisfied is not conclusive. The majority of jurisdictions will recognize the recipient's dissatisfaction only when he is *honestly*, even though unreasonably, dissatisfied and acts in good faith. The standard of good faith is employed when the contract involves personal aesthetics or fancy. *Weisz Trucking Co., Inc., supra; Erikson v. Ward* (1914), 266 Ill. 259, 107 N.E. 593 ("where ... furnish ... personal property, personal services, or works of art"); *see Johnson v. School District No. 12, Wallowa County* (1957), 210 Or. 585, 312 P.2d 591 (employee); *see Ward v. Flex-O-Tube Co.* (6th Cir. 1952), 194 F.2d 500 (business judgment evaluation of potential or uncertain liabilities); *see Kendall v. West* (1902), 196 Ill. 221, 63 N.E. 683 (theatrical performance).

1. IC 25–4–1–10. The educational requirements of a registered architect are set forth in IC 25–4–1–7.

2. Bowl sent its "specifications" one month after Glueck amended her counterclaim to allege Bowl's breach of the settlement agreement.

3. *Barrett v. Raleigh Coal & Coke Co.* (1902), 51 W.Va. 416, 41 S.E. 220; *Jenkins Towel Service, Inc. v. Tidewater Oil Co.* (1966), 422 Pa. 601, 223 A.2d 84.

4. *Kadner v. Shields* (1971), 20 Cal.App.3d 251, 97 Cal.Rptr. 742; *Radlo of Georgia, Inc. v. Little* (1973), 129 Ga.App. 530, 199 S.E.2d 835; *Black Lake Pipe Line Co. v. Union Construction Co., Inc.* (1976), 538 S.W.2d 80; *Johnson v. School District No. 12 Wallowa County* (1957), 210 Or. 585, 312 P.2d 591; *Ward v. Flex-O-Tube Co.* (6th Cir. 1952), 194 F.2d 500; *Kendall v. West* (1902), 196 Ill. 221, 63 N.E. 683.

 After considering the majority and minority views on the standards to be applied under similar factual situations as the one before us, we conclude that Indiana should follow the majority view. The varied factual postures in which questions of satisfaction arise requires that the standards adopted be flexible and comprehensive in their application. These standards are more flexible and comprehensive in their application to varied factual situations. In the case before us, the construction of the parking lot concerns commercial value and operative fitness rather than personal aesthetics. Therefore, the good faith standard is not applicable to the facts before us. *Weisz Trucking Co., Inc.* and *Erikson, supra.* The settlement agreement required a paved parking lot with 180 parking spaces designated by striping. Glueck was to construct the lot in accordance with the Gary City Code and Brunswick Corporation standards. Sufficient illumination for the lot and means of ingress and egress from Fifth Avenue to the parking lot were to be provided. The trial court did not err in using the standard of the reasonable person.

 Bowl further contends that in order for it to have breached the settlement agreement as set out in the trial court's findings of fact, Glueck must have proved what would have been a reasonable amount of time to approve the parking lot plans. Additionally, Glueck must have proved that complete plans were supplied. Bowl further contends that there is insufficient evidence on these matters. We disagree.

Bowl recognizes that what constitutes a reasonable amount of time depends upon the subject matter of the contract, the situation of the parties, and the circumstances attending performance. *Jay Clutter Custom Digging v. English* (1979), Ind.App., 393 N.E.2d 230. The evidence reveals that complete preliminary plans were provided by the architecture firm hired by Glueck. As required by the settlement agreement,

Glueck gave these plans to Bowl within thirty days of signing the agreement. The specifications for the parking lot were set out in paragraphs four and five of the settlement agreement. The trial court had before it the subject matter of the contract (the plans to be approved or disapproved), the situation of the parties, and the circumstances of the parties. The trial court found that Bowl had more than a reasonable amount of time to approve or disapprove of the plans. We will not reweigh the evidence and its logical inferences. This evidence is sufficient to support the trial court's finding.

 Bowl also contends there is insufficient evidence to support the trial court's finding that Bowl forwarded an uncertified lineage accounting to Glueck and later disputed its original lineage accounting. The settlement agreement required Bowl to furnish Glueck a certified lineage accounting. In the bowling business, each game bowled is equal to one line. A lineage accounting would set forth the total number of lines (games bowled) for a year. The lineage accounting provided by Bowl stated on its face that it was unaudited. Bowl's accountant also testified that the records were not certified. After Bowl had submitted its original lineage accounting, Bowl claimed it was not a complete, true accounting for the years 1973, 1974, and 1975. Bowl revised its original lineage accounting by subtracting employee lines from the figures previously submitted.[5] The above evidence is sufficient to support the trial court's finding of fact.

## IV.

### Admission of Evidence

 Bowl contends the trial court abused its discretion when it admitted certain letters as evidence because the letters are self-serving attempts to manufacture evidence, immaterial, and hearsay. Glueck's attorney offered as evidence two

**5.** Employee lines, also referred to as house lines, are games bowled by employees for a reduced price.

letters written by him to Bowl's attorney. These letters, Exhibits H and I, were admitted over Bowl's objections.[6]

■■■■ When an act is committed to a trial court's discretion, we will reverse its decision only upon a showing of manifest abuse of the trial court's discretion and denial to the complaining party of a fair trial. *Winker v. State* (1977), Ind.App., 367 N.E.2d 26. The trial court has abused its discretion only if it makes an erroneous conclusion that is clearly against logic and the natural inferences to be drawn therefrom. *Id.* Without some showing of prejudice, reversible error does not exist.

■■■ Both Exhibits H and I are merely cumulative evidence. Mrs. Glueck had previously testified about parts of the events in Exhibit H.[7] Exhibit I contained computations performed upon the lineage accounting figures admitted into evidence by Exhibit D. The only evidence in Exhibit I that is not in Exhibit D is the totals from the computations. The trial court could easily check the accuracy of these computations.

■■■ Bowl has failed to show how it was prejudiced by the admission of these exhibits as evidence. Assuming *arguendo* that there is inadmissible evidence in the exhibits or in the testimony on the same matters, it is presumed to have been disregarded by the trial court. *Misenheimer v. State* (1978), 268 Ind. 274, 374 N.E.2d 523. The trial court did not abuse its discretion in admitting these letters.

## V.

### Damages

The trial court awarded the following damages for Bowl's breach of the settlement agreement.

(1) The rent Glueck and Glueck's successor in interest, Wade, would have received if Bowl had not prevented the construction of the parking lot.

(2) Unpaid rent due for use of the building in 1973, 1974, and 1975.[8]

(3) The trial court limited Wade's financial obligation to construct the parking lot to $21,000, the 1976 estimated cost of construction.

On appeal, Bowl raises the following issues concerning the trial court's award of damages:

(A) Did the trial court err in awarding damages to Wade because Wade had not made any allegations of damages by way of answer, pretrial order, or motion at trial?

(B) Did the trial court err in awarding the $650 per month rent that would have been collected if Bowl had not prevented the construction of the parking lot?

(C) Did the trial court improperly award damages from October 15, 1976?

(D) Did the trial court err in computing the amount of rent owed from the number of games bowled?

(E) Did the trial court err in limiting the obligation to construct the parking lot to $21,000 by basing this limitation on hearsay, opinion and mere estimates?

6. Glueck argues that Bowl had waived his right to raise these objections on appeal since Bowl did not repeat its objection in written form and submit them along with its proposed findings of facts and conclusions of law as requested by the trial court. To preserve an error for review on appeal, a proper, specific objection must be made when the evidence is offered for admission. *Bryant v. State* (1980), Ind.App., 405 N.E.2d 583, 584. As Bowl did make specific objections at the time the evidence was offered for admission, it was not required to repeat these objections in written form along with its proposed conclusions of law and findings of fact in order to preserve an error for appeal.

7. Assuming *arguendo* that it was error to admit Exhibit H and Mrs. Glueck's testimony, Bowl has not shown how this prejudiced it. This evidence only goes to the trial court's finding that Glueck made several demands upon Bowl to comply with the settlement agreement. This finding was not necessary for the trial court's finding against Bowl.

8. This rent is determined by the number of games bowled for each year.

## A.

## Wade

Bowl contends the trial court erred in awarding damages to Wade because Wade had not made any allegation of damages by way of answer, pretrial order or motion at trial. Bowl ignores it brought Wade into this cause of action as a necessary party. Wade had attended the meeting in which the settlement agreement's terms were negotiated. Wade eventually purchased from Glueck the property covered by the lease between Glueck and Bowl. Testimony was admitted concerning Wade's damages. Bowl did not object to this evidence as not within the issues raised by the pleading. This issue was tried with Bowl's implied consent. TR. 15(B). Bowl also waived this issue on appeal as it did not include it in its motion to correct errors. AP. 8.3(A)(7).

## B.

## Parking Lot

Bowl contends the trial court erred in awarding as damages the $650 per month rent that would have been collected if Bowl had not prevented the construction of the parking lot. Bowl contends the trial court has given all the benefits of the settlement agreement to Glueck and Wade without deducting expenses saved by the breach.

A fundamental rule of damages is that a party injured by a breach of contract is limited in his recovery to the loss actually suffered. *Stoneburner v. Fletcher* (1980), Ind.App., 408 N.E.2d 545. By withholding approval or disapproval of the parking lot plans, Bowl prevented the paved parking lot from being constructed. Bowl did not pay Glueck or Wade rent for its use. Glueck and Wade were damaged to the extent they would have received this rent.

Bowl's contention that the cost of constructing the parking lot should have been counted as an expense against the rent is wrong. Bowl cites construction cases in support of its contention.[9] These cases are distinguishable on their facts.

In these construction contracts, the owner hires a contractor to improve owner's property. When the job is only partially completed, owner prevents contractor from finishing. The non-breaching contractor then receives the benefit of the bargain, his profit. The formula applied is contract price minus cost of performance equals profit.

In the present case, landlord leases a parking lot to tenant. Tenant breaches the lease by preventing the construction of the owner's parking lot. The non-breaching landlord is entitled to the benefit of the bargain, rent. Any variable costs the landlord saved would be deducted from the rent; however, fixed costs, such as the price of constructing the parking lot, are not. The trial court did not err in awarding the $650 rent as damages.

## C.

## Date

Bowl contends the trial court erred in awarding damages from October 15, 1976. We disagree.

In reviewing an award of damages, we do not require any particular degree of mathematical certainty; where there is doubt as to the exact proof of damages, such uncertainty must be resolved against the wrongdoer. *Stoneburner, supra.* Any measure of damages must be flexible enough to vary with the necessities of the situation. *Id.*

Glueck submitted the plans to Bowl on July 16, 1976. The settlement agreement required Bowl to give Glueck Bowl's last three years of financial statements by July 12, 1976.[10] Bowl admits that it did not

---

9. *Colberg v. Sebastian* (1943), 113 Ind.App. 94, 46 N.E.2d 716; *F. Enterprises, Inc. v. Kentucky Fried Chicken Corporation* (1976), 47 Ohio St.2d 154, 351 N.E.2d 121.

10. Bowl also contends its failure to supply the three years of financial statements by July 12, 1976 was not a material breach. We need not discuss whether the breach was material as none of the damages awarded flowed from this breach.

give Glueck this information until November 16, 1976. The evidence reveals Bowl knew these financial statements were required to receive financing to construct the parking lot. Several times Glueck requested that the financial statements be delivered. Glueck stood ready and willing to build the parking lot while Bowl delayed its construction by its breaches. The trial court could reasonably infer the parking lot would have been built by October 15, 1976. This is especially true when any uncertainty must be resolved against Bowl.

## D.

### Lineage Rent

Bowl contends the trial court's finding of fact 10(b), which states that the amount of lineage rent owing is $7,732.20, is clearly erroneous because the court included amounts for the year 1972 when the settlement agreement did not include that year's lineage.[11] Bowl further contends the trial court failed to exclude employee lines when computing the lineage rent owed. Bowl contends the trial court's finding is clearly erroneous because the testimony regarding the number of employee lines is not contradicted and the testimony that employee lines had not been excluded from the first figures supplied was not contradicted. We agree with these contentions.

Bowl's lease states Bowl is to pay Glueck five cents per bowling line over 400,000 lines and up to 425,000 lines per year and ten cents per line per year on all lines over 425,000. These figures are to be based on league play and open play, but employee lines and free lines [12] are excluded.

At the trial, a letter was admitted from Bowl's accountant dated June 18, 1976, stating that the attached schedules showing lines bowled were from the financial reports of the company for the years given.

The schedules noted they did not include free lines. Glueck calculated the amount owed from these figures.

Bowl did not provide Glueck with schedules of employee lines for 1973, 1974, and 1975 until it sent a letter dated July 20, 1977 (one year from when it provided the first figures). Bowl's accountant testified that to the best of his knowledge the figures were accurate. There was no testimony that the accountant had been supplied with false information or that the figures he provided were false. The trial court erred by including employee lines in its computation of the amount owed due to the lineage figures.[13] We reverse the trial court on this issue.

## E.

### Cost Limitation

Bowl contends the trial court erred in imposing a $21,000 cost limitation on Wade's obligation to construct the parking lot because the limitation is based upon mere estimates, opinion, and inadmissible hearsay.

Wade testified that two different sub-contractors told him it would cost $21,000 to build the parking lot in 1976. Bowl is correct that this evidence is hearsay; however, this evidence is merely cumulative. Both Wade and Glueck testified that when Wade purchased the property from Glueck, the price of constructing the parking lot was deducted from the purchase price. The price voluntarily paid by the purchaser is admissible as evidence of the property's market value. *Best v. State* (1975), 167 Ind.App. 378, 339 N.E.2d 82; *Indianapolis & Cincinnati Traction Co. v. Shepherd* (1905), 35 Ind.App. 601, 74 N.E. 904; *Heath v. Mosley* (1974), 286 N.C. 197, 209 S.E.2d 740. In this case, the parties, in an adversary relationship, agreed to reduce

11. The reports provided by Bowl's accountant show that the figures reflected the fact that Bowl's fiscal year end did not coincide with the calendar year end.

12. Free lines are games bowled for free as part of Bowl's sales promotion.

13. We need not discuss Bowl's allegation that it was error to admit any evidence regarding offers of settlement of these claims. Bowl connected the alleged error to the lineage accounting, which has been decided in Bowl's favor.

the purchase price by $21,000 to take into account the obligation to construct the parking lot. This reduction in the purchase price is some evidence of what it would have cost to construct the parking lot. The finder of fact weighed this evidence. We will not reweigh it.

Bowl is unsatisfied with mere estimates of the 1976 cost of construction of the parking lot. The only way to know to the penny how much it would have cost to construct the parking lot in 1976 would be to have actually built the parking lot in 1976. We do not require mathematical certainty. *Stoneburner, supra.* The trial court did not err in imposing the cost limitation to "freeze" the cost of construction in 1976.

Judgment affirmed in part and reversed and remanded in part.

HOFFMAN, P. J., and GARRARD, J., concur.