Allan J. WILLIG, Jr. and Nancy A. Willig, Appellants–Defendants,

v.

**William R. DOWELL and Delores J. Dowell, Appellees–Plaintiffs.**

No. 61A05–9302–CV–39 [1].

Court of Appeals of Indiana, First District.

Nov. 22, 1993.

1. This case was diverted to this office on October 18, 1993, by order of the Chief Judge.

478

Harold J. Bitzegaio, John P. Nichols, Terre Haute, for appellees-plaintiffs.

BAKER, Judge.

Today, we decide the propriety of the trial court's recognition of an equitable mortgage in favor of the appellee-plaintiffs William and Dolores Dowell.[2] The appellant-defendants Allan and Nancy Willig appeal the decision on the Dowells' action against the Willigs for nonpayment of a residential construction contract.

### ISSUES

We consolidate and restate the issues on appeal as:

1. Are the findings of fact clearly erroneous?

2. Did the Dowells make an election of remedies asserting title of Lot 3 to the exclusion of the equitable mortgage award?

3. Did the Dowells act inequitably barring any right to equitable relief?

4. Did the trial court improperly amend the Dowells' complaint and prejudice the Willigs?

5. Is redemption impossible?

6. Did the court erroneously order forfeiture of the Willigs' contributions to the property?

7. Did the court err in concluding that the Dowells performed the contract?

8. Did the trial court improperly rely upon matters outside of the record?

### FACTS

In August 1983, the Willigs bought 56 acres of real estate in Vigo County to develop a subdivision. William Dowell, an experienced contractor, agreed to construct a house on speculation in the Willigs' subdivision on Lot 3. The lot value under the contract was $35,000. Under the August 26, 1985 contract, the Willigs agreed to pay $20,000 as a down payment and the balance of $98,500 between "satisfactory comple-

B. Michael McCormick, Terre Haute, for appellants-defendants.

---

**2.** Dolores's name was misspelled in the caption    and throughout the record as Delores.

tion" of the house and one year from the contract. The contract provided that construction would be completed within a reasonable time.

Additionally, the contract required the Willigs to convey a warranty deed of Lot 3 to the Dowells in order to accommodate the Dowells' financing of the construction. Upon completion of the house and payment therefor, the Dowells were to reconvey Lot 3. The Dowells further agreed to obtain a mortgage loan on Lot 3 to finance the construction, and the Willigs agreed to pay the interest on the loan. However, the Dowells mortgaged other property instead of Lot 3 to secure a loan. The Willigs acquiesced in this arrangement and initially paid the interest on the loan. If the Willigs became dissatisfied with construction, the contract provided that upon written notice of their dissatisfaction, the Dowells would halt construction and reconvey title upon the Willigs' payment for the construction costs incurred.

During construction, the Willigs asked Herman Readinger, the general foreman developing their subdivision, to report on Dowell's progress on Lot 3. The Willigs never tendered any written complaints about construction even though they knew of certain deviations from the contract specifications. Also, the Willigs never objected in writing to the untimeliness of the completion of the house delayed beyond April 26, 1986. The Willigs improved Lot 3 by sodding the yard and wallpapering some of the interior of the house. Besides the $35,000 value of the lot itself and the $20,000 down payment, their contributions totalled $1,663.27.

In April 1986 when the house was substantially completed, the parties agreed to list the home with a realtor for $175,000. By the time the listing expired on August 26, 1986, no buyer had been located, and the relationship between the parties had deteriorated. On September 26, 1986, the Dowells demanded in writing payment of the balance due, claiming substantial completion of construction of the house. The Dowells also informed the Willigs of their intent to sell the property to recover their construction costs. Accordingly on October 14, 1986, the Dowells relisted the house for $119,500. On that same day, the Willigs recorded a memorandum of the contract in the recorder's office to reflect their interest in the property. In November 1986, the Dowells changed the locks on Lot 3 denying the Willigs access.

In February 1987, the Dowells contracted to sell the house to James Alexander for $113,000. Because the Willigs' recorded memorandum created a cloud on the title, the sale to Alexander was not completed and litigation is pending in another court regarding that transaction.

On March 12, 1987, the Willigs' attorney sent a letter to the Dowells asserting they failed to construct the house in a timely and workmanlike manner. The letter requested reimbursement of the lot value of $35,000, their $20,000 down payment, and their improvement expenses.

On June 3, 1987, the Dowells filed suit against the Willigs for breach of contract and slander of title. The Willigs responded and filed a counterclaim for restitution of their contributions in Lot 3. The Dowells' request for partial summary judgment was granted on February 24, 1988, divesting the Willigs of title in Lot 3. However, upon the Willigs' appeal, the judgment was reversed and remanded for trial in an unpublished opinion. *Willig v. Dowell*, (1991), Ind.App., 567 N.E.2d 882.

Following a two-day trial, the trial court entered lengthy findings of facts and conclusions of law on October 14, 1992. The judgment awarded Dolores $139,607.21 plus interest for her breach of contract claim under an equitable mortgage theory, but denied her slander of title claim.[3] The court also determined the Willigs failed to prove their counterclaim. The court further stated that if the Willigs failed to redeem Lot 3 by satisfaction of Dolores'

---

**3.** William Dowell died before the trial court's judgment was entered on October 14, 1992. The causes of action inured to Dolores.

lien, Dolores could foreclose on the property and be reimbursed from the proceeds of a sheriff's sale. The Willigs filed this appeal following the denial of their motion to correct error.

## DISCUSSION AND DECISION

### I. Standard of Review

■ We review a judgment accompanied by requested findings of fact and conclusions of law under a limited standard of review. First, we determine whether the evidence supports the findings and then whether the findings support the judgment. We will affirm the judgment if it is not clearly erroneous. *Williams v. Rogier* (1993), Ind.App., 611 N.E.2d 189, 192–93, *trans. denied.*

■ In their appellate brief, the Willigs asserted their arguments generally without contesting specific findings or conclusions of the trial court. After Dolores alerted them of this omission, they responded in their reply brief by attacking specific findings and conclusions. Because several of the arguments in their reply brief were not advanced in the appellants' brief, those arguments were waived and not considered here. *See C.M.S. v. Goforth* (1993), Ind. App., 606 N.E.2d 874, 874, n. 1 (issue may not be raised for first time in reply brief).

### II. Findings of Fact

■ The Willigs attack Finding No. 9, which states the balance for construction is owed at the time of satisfactory completion and one year from the contract. The contract states the balance is due between these two periods. The court's misstatement of the contract language of "at the time" as opposed to "between" does not affect the decision. The court determined the Willigs failed to pay the balance upon demand on September 10, 1986. Record at 338 (Finding No. 45). The court's decision was based upon the Willigs' breach of nonpayment as of September 10, 1986. *See* Record at 340 (Conclusion No. 11). The misstatement in Finding No. 9 does not upset the decision.

The Willigs challenge Finding Nos. 16 and 17 on the scope of Readinger's duties and his knowledge of defects. Finding No. 16 states that the Willigs requested Readinger to report on the progress of Dowell's construction on Lot 3. Readinger's testimony supports this finding. *See* Record at 658–59. The Willigs assert the finding is clearly erroneous because after April 1986, Readinger no longer made daily reports on Lot 3 since he was in Michigan. The finding, though, does not conflict with this evidence, but reasonably refers to the construction completed before April 1986 when Readinger was still observing and reporting on Dowell's construction. The Willigs complained about the concrete footings and a buried tank in their March 1987 letter. These defects were ones of which Readinger was cognizant before he left for Michigan. Record at 660, 665–66. Readinger testified the house was at least 50% completed by the winter of 1985 when the shell was erected. Record at 679–80.

■ Finding No. 17 further states that neither Readinger nor Willig informed Dowell of any complaints during construction. Although the record shows Readinger did disagree with Dowell regarding the footings and the tank, he did not demand Dowell conform to his suggestions. The inference supporting the court's finding is that Dowell was not ordered to modify the footings or to remove the tank. Because the record is not devoid of facts and inferences supporting them, Finding Nos. 16 and 17 are not clearly erroneous. *See Williams*, at 193.

Finding No. 18, the Willigs claim, is ambiguous; and thus, they do not carry their burden of showing the finding is clearly erroneous. Furthermore, the evidence supports Finding No. 18 that since neither Readinger nor the Willigs complained about the construction delay, the Willigs acquiesced to the delays. The Willigs were aware of the untimeliness of construction but never submitted a written complaint *during* construction. They admit that they did not exercise their right under Paragraph 14 of the contract.

Likewise, the Willigs' attack on Finding No. 25 citing their failure to complain about the timeliness of construction is insufficient to establish the finding is clearly erroneous.

■ Next, the Willigs' claim the portion of Finding No. 26 referring to Readinger conflicts with unrefuted evidence. Finding No. 26 states that Readinger made daily inspections of Lot 3 during the summer and fall of 1986. The Willigs correctly maintain the uncontroverted evidence is that the daily inspections occurred in the summer and fall of 1985. We believe the year in Finding No. 26 is a typographical error which did not corrupt the trial court's conclusions and judgment.

In Finding No. 29, the court found that the Willigs did not contact the Dowells after receiving the September 10, 1986 balance statement. The Willigs argue evidence was presented that Mr. Willig tried unsuccessfully to contact Dowell from receipt of the statement until October 5, 1986. In Finding No. 32, the trial court acknowledged that the Willigs claimed they tried to contact the Dowells. The court's findings merely indicate that no actual contact was made until October 5, 1986. The evidence supports the findings.

Next, the Willigs contend Finding No. 38 is clearly erroneous, because it finds that they did not object to the $119,500 list price. To the contrary, the Willigs indicated in their March 12, 1987 letter that the reduced price may damage them. Record at 389. However, the Dowells reduced the list price in October 1986. The Willigs did not complain for five months, and then only after the Dowells located a buyer for the house. The fact that the Willigs did not make any immediate objection to the reduced list price supports Finding No. 38; thus, it is not clearly erroneous.

Finding Nos. 44 and 45 declare the Willigs breached the contract by failing to pay the balance of $102,047.40 demanded on September 10, 1986. The Willigs claim that the court failed to find satisfactory completion of the house or when the duty to pay ripened. They contend the trial court erred in applying a "substantial completion" standard instead of a "satisfactory completion" standard.

■ When performance is conditioned upon one of the party's satisfaction, Indiana applies a reasonable person standard or a good faith standard depending upon the specific circumstances. *Ind. Tri–City Plaza Bowl, Inc. v. Estate of Glueck* (1981), Ind.App., 422 N.E.2d 670, 675–76. A reasonable person standard is used to review performance of contracts involving commercial quality, operative fitness, or mechanical utility which other knowledgeable persons can judge. *Id.* at 675. On the other hand, the good faith standard is utilized when performance requires subjective satisfaction in contracts involving personal aesthetics or fancy. *Id.* The adequacy of Dowell's performance of constructing a house in a timely, good and workmanlike manner is judged by the reasonable person standard, because the Willigs intended to sell the house to develop their subdivision, which concerns commercial value and operative fitness. Dissatisfaction under this standard cannot be claimed arbitrarily, capriciously, or unreasonably. *Id.* Satisfaction is met if a reasonable person in exactly the same circumstances would be satisfied. *Id.*

Finding No. 9 acknowledged the "satisfactory completion" condition. The court found that the house was substantially completed by August 1986. Record at 336 (Finding No. 24). The court concluded that the house was substantially completed on August 26, 1986; that the Dowells completed the construction of the home in accordance with the plans and specifications; and that the Dowells constructed the house in a timely and good and workmanlike manner and fulfilled the terms of the contract. Record at 339–40 (Conclusion Nos. 4, 6, and 9). In light of the court's findings and conclusions, we presume the court found the satisfactory completion of the house under a reasonable person standard. *See Bishop v. Sanders*, 624 N.E.2d 64, 66 (Ind. App.1993) (where no explicit finding of necessary fact to support its judgment, we assume trial court made finding). The lack

of an express finding does not invalidate the decision.

In Finding No. 46, the trial court calculated the amounts the Willigs owed Dolores. The court included $7,748.65 in interest on the construction loan paid from 1986 to 1992. The Willigs deny an obligation to pay the interest on the loan. The court's Finding No. 10 cites the contract provision in which the Willigs agreed to pay interest on the loan. Finding No. 11 that the Willigs agreed to the loan arrangements the Dowells made is supported by the record. The trial court properly included this interest in the amounts owed to Dolores.

The Willigs further deny they are obligated to pay the insurance premiums added in Finding No. 46. The contract reflects the Dowells agreed to carry insurance during construction. Record at 87. However, the insurance premiums in Finding No. 46 are for coverage the Dowells maintained after construction was completed and paid from 1988 to 1992. *See* Record at 414. These expenses in maintaining the property were properly included to reimburse Dolores.

■ Next, the Willigs argue the trial court erred in computing the rental deduction from Dolores' award in Finding No. 47. The court used the actual rents received instead of the fair market rental value. However, the Willigs admit they presented no evidence of the fair market rental value. They blame their failure to present such evidence on the fact that they were unaware of the equitable mortgage theory. This argument is meritless because the complaint asserted damages for the nonpayment of the contract. Thus, the Willigs had notice that an award to the Dowells would be reduced by any rents they collected to mitigate their damages. The Willigs could have tendered fair market rental value, but did not. The trial court did not err in calculating the rental deduction based upon the actual rents received.

■ The Willigs contest Finding Nos. 48 and 49 computing prejudgment interest on the balance due. Prejudgment interest is awarded in a contract case only where the contract terms make the claim ascertainable and the amount owed is certain upon mere computation. *Sand Creek Country Club v. CSO Architects* (1991), Ind.App., 582 N.E.2d 872, 876. Prejudgment interest is computed from the time the principal amount was demanded or due. *Id.* Here, the contract specified a balance of $98,500 due between satisfactory completion and one year. The parties do not dispute that the final balance for construction after agreed improvements and expenses totalled $102,047.40. The Dowells demanded this amount on September 10, 1986. Because the amount of damages was ascertainable on September 10, 1986, the assessment of prejudgment interest from that date was proper.

In Finding No. 50, the trial court found that the Willigs failed to satisfy their burden of proof on their counterclaim alleging the Dowells breached the construction contract. The Willigs merely state on appeal that they presented unrebutted evidence of their counterclaim seeking $150,000 damages for an alleged decreased value of the subdivision resulting from the Dowells delay in construction on Lot 3. The denial on the counterclaim is supported by the trial court's other findings that the Willigs failed to prove the Dowells breached the contract, or that the Dowells' performance was untimely. The court specifically held the Dowells fulfilled the contract. Record at 339 (Conclusion No. 6). The Willigs have not shown the trial court's decision on the counterclaim is clearly erroneous.

In sum, the record supports the trial court's findings of fact.

### III. Conclusions of Law [4]

#### A. Equitable Mortgage

■ Based upon its findings, the trial court concluded that Dolores was entitled

---

**4.** The Willigs also challenge Conclusion Nos. 4 and 5. However, they are actually findings of fact whose content the trial court considered in Finding Nos. 24, 29 and 45, and we discussed in *Issue I.*

to damages on her breach of contract claim under an equitable mortgage theory. Record at 339 (Conclusion No. 3). When the conveyance of a deed is made as security for the payment of money and is held as collateral security, an equitable mortgage is created. *Brenneman Mechanical & Electrical, Inc. v. First National Bank* (1986), Ind.App., 495 N.E.2d 233, 238–39, *trans. denied.* The Willigs raise several unconvincing contentions that attack the fairness of recognizing an equitable mortgage. We consider each contention separately.

### 1. Election of Remedies

■ First, the Willigs' claim that the application of an equitable mortgage is precluded under the election of remedies doctrine. They maintain that Dolores' elected remedy was to obtain absolute title in the house. They point to the 1988 summary judgment giving her title, her position throughout the instant trial, and her contract to sell the house to Alexander.

■ The election of remedies doctrine is an equitable principle that bars a party who has two inconsistent remedies and elects to prosecute one to a conclusion from seeking recovery under the other inconsistent theory. *See Phipps v. First United Savings Bank* (1992), Ind.App., 601 N.E.2d 13, 16. However, the inclusion of inconsistent remedies in a complaint is not an election of remedies. *Farmers State Bank v. Clark Equipment* (1991), Ind. App., 582 N.E.2d 452, 456.

■ The Willigs' arguments related to the 1988 summary judgment in favor of Dolores are meritless because it was set aside on appeal and became a nullity; it has no binding effect here. *See Koors v. Great Southwest Fire Insurance Co.* (1989), Ind.App., 538 N.E.2d 259, 260. The contentions in the previous proceedings cannot be considered to support the Willigs' theory of election of remedies. The cases the Willigs cite for support hold only

that the election of remedies doctrine is invoked when a chosen remedy is prosecuted to a conclusion. *See Phipps*, at 16; *Farmers State Bank*, at 455 (elected remedy in settlement); *Nehi Beverage Co. v. Petri* (1989), Ind.App., 537 N.E.2d 78, 86, *trans. denied* (bankruptcy judgment was an elected remedy). Such is not the case here.

Dolores' position throughout the trial and her attempt to sell the house are not an election of remedies and are not inconsistent with the equitable mortgage finding. Dolores has maintained the right to payment of the construction contract. The complaint seeks repayment under the contract. Record at 48–49. In the alternative, Dolores sought exclusive title of the property so that she could recover the amount due under the contract through resale. The Dowells' statements of their right to the property during the trial are based upon the nonpayment of the contract. The election of remedies doctrine is not applicable here.

### 2. Equity

■ The Willigs next contend the Dowells' acted inequitably by 1) locking them out of the house and impinging upon their right of inspection; 2) lowering the list price; and 3) agreeing to sell to Alexander. He who seeks equity must do equity; an equitable mortgage will not be recognized if the party asserting the theory has acted inequitably. *Moore v. Linville* (1976), 170 Ind.App. 429, 352 N.E.2d 846, 850. The acts the Willigs complain were inequitable all occurred after the Willigs refused the Dowells' demands for payment under the contract. The Dowells were acting upon their rights to protect their interests in the property and are not thereby precluded from an equitable remedy.

### 3. Amendment of Complaint

■ Next, the Willigs allege the court effectively amended the Dowells' com-

---

In Conclusion Nos. 7 and 10, the court cited waiver and estoppel against the Willigs since they did not give the Dowells notice of their dissatisfaction during construction. These find- ings are gratuitous since the trial court concluded the Dowells' performance was not dissatisfactory. Therefore, we do not address the Willigs' arguments concerning these two conclusions.

plaint, which they contend does not state a claim for an equitable mortgage. Their argument continues that the court's amendment prejudiced them.

Contrary to the Willigs' allegations, the complaint was not, nor did it need to be, amended by the court's decision. Count I of the Dowells' complaint alleges the Willigs breached the 1985 contract and have repeatedly refused their demands for payment. Record at 48. The Dowells requested the court find the Willigs breached the contract and owed compensatory damages in an amount sufficient to pay them for additional expenses incurred in construction and maintenance of the property. Record at 49. The general request for relief is inclusive of an equitable remedy. The court's judgment does not exact an amendment of the complaint.

### 4. Impossible Redemption

We recognize the purpose of an equitable mortgage is to permit the grantor of a deed to be treated as a mortgagor where the grantee had agreed to reconvey under certain conditions. *Brenneman,* at 239. The deed is considered a mortgage and gives the grantor the right to redeem the property by satisfying the conditions of the agreement. *Id.* The Willigs mistakenly assert that no Indiana cases have invoked an equitable mortgage remedy for the grantee of the deed. They argue such remedy should only be allowed when pursued by the grantor. In *Brenneman,* the trial court determined that the grantee, the bank in possession of a deed, held only a mortgage interest in the property and did not own it. *Id.* at 237. The bank then foreclosed on the property. A mechanic's lien holder unsuccessfully appealed the finding of the bank's equitable mortgage. Thus, *Brenneman* is an example of a case where a grantee maintained an equitable mortgage claim.

The Willigs also contend that redemption does not provide complete relief. They state that redemption is impossible since the property now has a clouded title due to Alexander's suit for specific performance. They complain they would not be receiving the same title they conveyed due to the clouded title. They cite no cases in support of their argument that an equitable mortgage should not be acknowledged in this instance. Furthermore, we remind them that relief was awarded to Dolores for the Willigs' breach. They must suffer the consequences of their breach. The present situation would not exist but for their breach. If they choose not to redeem the property, they essentially are opting to give up their contributions.

### 5. Forfeiture

The Willigs' next contention is related to the one above. They argue that the equitable mortgage remedy inflicts a forfeiture of their contributions to the property exceeding $58,000. This contention fails simply because the trial court's decision does not require a forfeiture. Equity allows the Willigs to redeem the property, and get the benefit of their contributions. We also note that in the event of foreclosure, the judgment specifically provides that any proceeds from the sale exceeding the costs of the sheriff's sale and the amount owed to Dolores will be returned to the Willigs. Record at 342.

### B. Performance of Contract

Conclusion No. 6 states that the Dowells completed the construction in a good and workmanlike manner and in a timely manner pursuant to the agreement of the parties and fulfilled the contract terms. The Willigs argue that there is uncontradicted evidence refuting this conclusion. The only evidence they cite is that the house did not meet the square footage requirements specified in the plans. Although the plans contemplated a 2,511 square foot house, no dimensions were included on the diagram to reflect whether the square footage requirements were for the internal or external measurement of the house. The Willigs presented a real estate appraisal indicating the interior measurements of 2,395 square foot. The appraisal, though, measures only interior living area, which differs from other methods of calculating square footage such as gross exterior footage. The Willigs have not shown the plans specified an interior of

2,511 square footage. Thus, they have failed to show the house was not built in accordance with the plans. The inferences in the record support the court's finding.

### C.   Court Comments

The last allegation of error is that the court improperly considered matters outside the record in determining the timeliness of construction. At the close of the evidence, the court invited the attorneys to discuss certain issues in the context of a closing argument. The trial judge's references to past experiences bolstered his reasons for discrediting factual issues in the instant case. Moreover, the court explicitly stated it had not reached a decision on the case and suggested post-trial memoranda be filed. We do not discern any impropriety in the court's closing colloquy with counsel.

The Willigs' challenges to the remaining conclusions are based on their assertion that the underlying findings are erroneous. Because we have determined that the evidence supports the findings, the Willigs' contentions regarding the related conclusions fail.

The trial court's judgment is in all things affirmed.

ROBERTSON and RUCKER, JJ., concur.