James F. ALEXANDER, Appellant (Plaintiff Below),

v.

William R. DOWELL, Dolores J. Dowell, Alan J. Willig and Nancy A. Willig, Appellees (Defendants Below).

No. 84A04–9507–CV–253.

Court of Appeals of Indiana.

July 30, 1996.

Rehearing Denied Sept. 24, 1996.

James L. Crawford, Wagner, Crawford, Gambill & Trout, Terre Haute, for Appellant.

John P. Nichols, Harold J. Bitzegaio, Anderson & Nichols, Terre Haute, B. Michael McCormick, Terre Haute, for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

James F. Alexander ("Alexander") appeals from the grant of summary judgment entered in favor of William R. and Delores J. Dowell[1] ("the Dowells") and Alan J. and Nancy A. Willig ("the Willigs") on Alexander's complaint for specific performance of a real estate purchase agreement.

### FACTS

In August 1983, the Willigs bought 56 acres of real estate in Vigo County to develop a subdivision. (R. 176). William Dowell, an experienced contractor, agreed to construct a house on speculation in the Willigs' subdivision on Lot 3. (R. 257–58). According to a contract of August 26, 1985, the Willigs were to pay a total of $118,500 in a down payment and the balance on completion; further, the Willigs would convey a warranty deed of Lot 3 to the Dowells, in order to accommodate the Dowells' financing of the construction, with the property being reconveyed to the Willigs upon their payment in full to the Dowells. *Id.* at 258–59.

The Willigs executed the warranty deed conveying the real estate to the Dowells on May 29, 1986, and the deed was recorded on June 9, 1986. (R. 61). In April 1986, when the house was substantially completed, the Willigs and the Dowells listed the home with

---

1. As noted by the trial court in the related matter, Dolores J. Dowell's name has been misspelled at various times. In the written agreements underlying this action, she signed her name "Dolores J. Dowell." *See, e.g.,* R. 62.

a realtor for $175,000. (R. 178). In September 1986, the Dowells demanded the balance due from the Willigs. (R. 179). The Willigs refused to pay. On October 14, 1986, and unbeknownst to the Dowells, the Willigs recorded a "Memorandum of Contract" that indicated that the Dowells and the Willigs had executed a contractual agreement concerning the real estate on August 26, 1985 but did not reveal the terms of that agreement. (R. 63–64). In February 1987, the Dowells listed the property for sale at $119,500. (R. 180). On February 14, 1987, Alexander submitted an agreement to purchase the real estate for $113,000 to the Dowells, and on February 16, 1987, the Dowells accepted the purchase agreement. (R. 15). Alexander applied for a mortgage loan, but the bank refused to make the loan inasmuch as the recorded memorandum of contract left the Dowells unable to convey clear title. (R. 174). Over the next year, Alexander proposed a series of arrangements whereby the Willigs would quitclaim their interest in the property to the Dowells. None were acceptable to both the Dowells and the Willigs.

On June 3, 1987, the Dowells filed suit against the Willigs for breach of contract and slander of title. In June of 1988, after having allowed Alexander to occupy the subject property, the Dowells insisted he vacate the premises or face eviction; Alexander complied. On August 16, 1988, Alexander filed the instant complaint against the Dowells and the Willigs seeking both specific performance pursuant to the purchase agreement and damages.

In the meantime, the litigation between the Dowells and the Willigs proceeded as follows: grant of partial summary judgment for the Dowells, divesting the Willigs of title (1988); appeal to the Court of Appeals, where the partial summary judgment was reversed and the matter remanded for trial (1991); trial (1992); appeal to the Court of Appeals with affirmance of a judgment for the Dowells on the breach of contract claim, *Willig v. Dowell*, 625 N.E.2d 476 (Ind.Ct. App.1993); remand after rehearing to amend the insurance premium award, *Willig v. Dowell*, 627 N.E.2d 1365 (Ind.Ct.App.1994); and a final order dated May 2, 1994. The judgment therein found that the deed executed by the Willigs was an equitable mortgage which constituted a first mortgage lien on the property, and Dolores Dowell owned and held that mortgage.[2] Upon the Willigs' failure to exercise their right of redemption, the property was sold to Dolores Dowell on July 12, 1994, at a sheriff's sale for the amount of the lien—$153,533.89.

On September 26, 1994, Dowell moved for summary judgment, asserting she was entitled to summary judgment for four reasons: 1) the cloud on the Dowells' title had prevented their providing Alexander with perfect title; 2) because the cloud on the title made it impossible for Alexander to obtain financing, "Dowells were under no duty to perform" (R. 192); 3) because Alexander could not obtain financing, "he was not ready, willing and able to perform the contract," *Id;* and 4) specific performance "would be inequitable and unreasonable" to Dowell and would unjustly enrich Alexander. *Id.* Dowell's designated evidence consisted of the purchase agreement, the recorded memorandum of contract, an affidavit of a realtor about the Alexander deposit, and the final judgment in the litigation between the Dowells and the Willigs.

On October 12, 1994, the Willigs' moved for summary judgment, claiming that the Willigs were not a party to the purchase agreement, did not consent to or authorize it, had no contractual relationship with Alexander, and currently had no interest in the subject real estate. Their sixteen exhibits included the Sheriff's Deed giving Dowell title to the subject property.

Thereafter, Alexander filed his brief in opposition to the other parties' motions, asserting a number of issues and designating the materials submitted by both Dowells and Willigs as well as his own affidavit and that of his counsel. Subsequently, Alexander also moved for summary judgment, designating

---

**2.** William Dowell died at some point before October 14, 1992. *Willig v. Dowell, supra,* at n. 1.

The causes of action inured to Dolores Dowell.

all summary judgment material then before the court.

On February 6, 1995 (almost seven years from the date of the purchase agreement), the trial court granted Dowell's and Willigs' summary judgment. The order stated that because Willigs were not parties to the land sale contract, they could not be held to specifically perform the contract. With respect to Dowell, the court stated,

> The land sale contract in question was subject to two conditions precedent: (1) the buyer's (Alexander) ability to obtain financing; and (2) the seller's (Dowell) ability to deliver a clear title. Neither condition was satisfied since the bank would not approve financing and the Dowells at the time of entering into the contract did not have title at all. They merely held an equitable lien on the property as later determined by the Parke Circuit Court. Therefore, not only could they not deliver clear title, there was a mutual misunderstanding as to the nature of their property interest in the property, i.e. they only have a lien and title was vested in the Willigs.
>
> The fact that the Dowells now have title to the real estate in question after six (6) years of litigating and a Sheriff's Sale, does not persuade the court that specific performance should be ordered. The reasonable expectations of both parties would not be that the contract would be viable for this length of time; rather only for a reasonable length of time. Also, equitable considerations indicate that it would be unfair to the Dowells to convey the property at the then contract price. Indeed, because neither party knew, nor perhaps could reasonably foresee, that the Parke Circuit Court would rule that the Dowells had no title at all, there was a mutual misunderstanding by the parties that indicates there was not [sic] valid contract.

(R. 368–69).

## DECISION

Alexander argues that "Dowells and Willigs were not entitled to summary judgment" and that "specific performance should have been ordered requiring a conveyance of the real estate to Alexander." Alexander's Brief at 9–10. In other words, Alexander claims the trial court erred in granting summary judgment to Dowells and Willigs and erred in denying his motion for summary judgment.

▆▆▆ In reviewing the propriety of a grant of summary judgment, we apply the same standard applicable as in the trial court. *Malachowski v. Bank One*, 590 N.E.2d 559, 562 (Ind.1992). Thus, we consider the pleadings and evidence sanctioned by Ind. Trial Rule 56(C) without deciding its weight or credibility. *Id.* Once a movant has submitted materials pursuant to T.R. 56 to show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the burden shifts. The nonmovant may not rest on his pleadings but shall designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto. T.R. 56(C). Only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law should summary judgment be affirmed. *Malachowski, supra.*

### 1. *Summary Judgment in Favor of Willigs*

▆▆▆ The substance of the Willigs' motion for summary judgment is described above. The Sheriff's Deed evidenced that title to the property at the time of the motions was held by Dowell. No evidence put forth by either Dowell or the Willigs showed a contractual relationship between Alexander and the Willigs.

▆▆▆ The Willigs observe that Alexander fails to provide any authority in his appellate brief to support "any claim against the Willigs," Willig Brief at 7, and that Alexander failed to oppose their motion for summary judgment. Waiver for failure to properly support a claim of trial court error notwithstanding, the lack of opposition to another's motion for summary judgment does not result in "an automatic summary judgment" because the "moving party still bears the burden of showing the propriety of summary judgment." *Carroll v. Lordy*, 431 N.E.2d 118, 121 (Ind.Ct.App.1982). Nevertheless, as

the Willigs correctly contend, the case of *Guraly v. Tenta,* 126 Ind.App. 527, 132 N.E.2d 725 (1956), is controlling.

> [T]he onus was upon the appellant [the party seeking specific performance] to establish not only that her asserted contract was one capable of specific performance but, also that the contract was binding upon and enforceable against the appellee. Specific performance can not be enforced against one who is neither a party nor privy to the contract and on whom it is not binding, or by whom no duty under the contract has been assumed. It was, therefore, an essential element of appellant's right to specific performance of her contract with the decedent that she establish that appellees [ ] were either parties to the said contract or that they were in privity therewith or that they in some other stated manner had become bound by it. The court found none of these facts.

*Id.* at 727. As there was no evidence submitted by Alexander to the trial court that the Willigs were bound by the purchase agreement between Alexander and the Dowells, the order granting summary judgment to the Willigs is affirmed.[3]

2. *Summary Judgment in Favor of Dowells*

■ Alexander claims the trial court erred in its statement that both Alexander's obtaining of financing and the Dowell's delivery of clear title were unfulfilled conditions precedent pursuant to the purchase agreement. We agree. According to the designated material before the trial court, once the Dowells became aware of the recorded memorandum affecting their title to the real estate, they would not go forward with the sale. When a seller refuses to perform, a tender of the amount due is not necessary in order for the buyer to bring a suit for specific performance. *Dempster v. Miller,* 124 Ind.App. 518, 119 N.E.2d 720, 722 (1954). Further, tender of the purchase price is not required as a condition precedent to a suit for specific performance of a contract for the

sale of real estate where the vendor evinces an intention not to perform. *Id.*

■ Alexander further challenges the trial court's suggestion that specific performance would be unfair because the property had appreciated in value since the time of the purchase agreement. As he correctly notes, we rejected this argument in *Lewandowski v. Beverly,* 420 N.E.2d 1278, 1281 (Ind.Ct.App. 1981), as not applicable where the seller—not the buyer—failed to properly perform. For the sake of fairness, we note that the record is void of any evidence that Alexander caused any of the delays in quieting title to the real estate. Further, there is no evidence that Alexander took any action inconsistent with his commitment to consummate purchase of the real estate.

■ As to the court's reference to the intervening time exceeding the "reasonable expectation" of the parties for the vitality of the contract, what constitutes a reasonable time under the circumstances is a question of fact. *Bond v. Peabody Coal Co.,* 450 N.E.2d 542, 549 (Inc.Ct.App.1983).

■ Finally, the court's conclusion that a mutual misunderstanding renders the purchase agreement invalid cannot be sustained as a matter of law. According to Dowell, it was "an accepted fact that the Purchase Agreement was entered into by the parties, and the terms of the contract, including the various required conditions are clear." (R. 194). The agreement stated Dowells "shall convey title to the property to the Purchaser by the delivery of a good and sufficient General Warranty Deed" and would furnish evidence of "good merchantable title ... within a reasonable period of time" of their acceptance of Alexander's offer. (R. 15).

As a matter of law, the absence of clear title does not affect the validity of a purchase agreement. *See,* 91 C.J.S. *Vendor & Purchase* § 21(a)(1955)("The fact that realty is subject to encumbrances or liens does not prevent it from being the subject matter of a

---

**3.** Alexander's attempt to make an argument in his reply brief which expands his contention of error to include a damages analysis apart from his initial specific performance arguments is

unavailing. A reply brief may not present new theories of appeal. *Ward v. State,* 567 N.E.2d 85 (Ind.1991).

contract of sale.") and (b) ("A contract of sale may, however, be valid and enforceable if made in good faith by a vendor notwithstanding the subject matter is realty to which the vendor, at the time of entering the contract, has no title, or ... has a smaller interest than he agrees to convey...."). Rather, because the purchaser is ordinarily entitled to a good title free of encumbrances, it is the duty of the vendor prior to the time of the conveyance to remove any existing encumbrances. *Id.* at 92 § 289.

Dowell argues that the court correctly found the contract invalid because of "mutual mistake as to a material fact." Dowell's Brief at 14. However, as Alexander correctly responds, it is a mistake of fact rather than a mistake of law which may be relied on to avoid a contract. *See,* 6 I.L.E. *Contracts* § 62 (1958). That it took the courts six years to determine the respective interests of the Willigs and the Dowells in the subject real estate makes it abundantly clear that the Dowells' "mistake" in thinking they held title to the property was one of law.

 Because there was a valid contract which required the Dowells to convey the real estate to Alexander, and because the terms of the contract and uncontroverted evidence presented to the trial court did not establish that the parties intended time to be the controlling element of the contract, Dowell is not entitled to judgment as a matter of law, and the summary judgment in her favor must be reversed.

### 3. *Summary Judgment Denied to Alexander*

In reviewing the denial of a motion for summary judgment, we apply the same standard as the trial court. *Brougher Agency v. United Home Life Ins.,* 622 N.E.2d 1013, 1016 (Ind.Ct.App.1993), *trans. denied.* Because Alexander is appealing the denial of his motion, however, he bears the burden of persuading us that the trial court's decision was erroneous. *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992).

In his appellate presentation,[4] Alexander has effectively put forth well supported arguments demonstrating why the summary judgment granted to Dowell was erroneous.

However, his claim that the denial of his motion for summary judgment was erroneous lacks such purposefulness and tends more toward a false syllogism: because Dowell's motion should not have been granted, his should have. Similarly, in opposing Dowell's motion for summary judgment in the trial court, Alexander produced authority and significant evidence of his having facilitated various opportunities for the Dowells to have been able to convey clear title in 1987. However, his own motion for summary judgment, filed about a month later, was limited to a one page document simply claiming he was entitled to judgment as a matter of law based upon all material before the court.

Alexander's appeal has failed to persuade us the trial court erred in denying his motion. However, because we are remanding for a reversal of the summary judgment granted Dowell, Alexander will finally have his day in court to prove that his consistent willingness to honor the purchase agreement in the face of the Dowells' refusal to do so entitles him to specific performance of the purchase agreement. At that time, he may also pursue the damages claimed in his complaint.

Affirmed in part, reversed and remanded for trial.

RILEY and KIRSCH, JJ., concur.

---

4. We heard oral argument on this matter on July 9, 1996.